1

2

3

4

5

6

7

8            IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10    TYRONE DANIEL JOHNSON,

11              Plaintiff,              No. CIV S-10-1183 MCE GGH P

12         vs.

13    DIRECTOR OF CDCR, et al.,

14              Defendants.            FINDINGS AND RECOMMENDATIONS

15    _____/

16            Plaintiff is a state prisoner proceeding pro se and in forma pauperis with an action

17    filed pursuant to 42 U.S.C. § 1983.  By order filed August 9, 2010, plaintiff's complaint was

18    dismissed with leave to file an amended complaint.  Plaintiff has filed an amended complaint.

19            As plaintiff was previously informed, the court is required to screen complaints

20    brought by prisoners seeking relief against a governmental entity or officer or employee of a

21    governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion

22    thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state

23    a claim upon which relief may be granted, or that seek monetary relief from a defendant who is

24    immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).

25            A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

26    Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28

1

1   (9th Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an

2   indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,

3   490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

4   pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th

5   Cir. 1989); Franklin, 745 F.2d at 1227.

6          A complaint must contain more than a "formulaic recitation of the elements of a

7   cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the

8   speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007).

9   "The pleading must contain something more...than...a statement of facts that merely creates a

10  suspicion [of] a legally cognizable right of action."  Id., quoting 5 C. Wright & A. Miller, Federal

11  Practice and Procedure 1216, pp. 235-235 (3d ed. 2004).   "[A] complaint must contain sufficient

12  factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft

13  v. Iqbal, No. 07-1015, 2009 WL 1361536 at *12 (May 18, 2009) (quoting Twombly, 550 U.S. at

14  570, 127 S.Ct. 1955).  "A claim has facial plausibility when the plaintiff pleads factual content

15  that allows the court to draw the reasonable inference that the defendant is liable for the

16  misconduct alleged."  Id.

17          In reviewing a complaint under this standard, the court must accept as true the

18  allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S.

19  738, 740, 96 S.Ct. 1848 (1976), construe the pleading in the light most favorable to the plaintiff,

20  and resolve all doubts in the plaintiff's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct.

21  1843 (1969).

22          Plaintiff names as defendants: a court stenographer named Peggy Bakarich; Hilda

23  Scheib, his appellate attorney; and the Director of CDCR.[1]  Amended Complaint (AC), pp. 1-3.

24  He alleges that defendant Bakarich failed to inform the trial court and his trial attorney [in

25  _____

26          [1] California Department of Corrections and Rehabilitation.

2

Sacramento County] that court records were incomplete and also misled the Third Appellate

Court by certifying that the trial records were complete when the oral pronouncement of the

twenty-five-year-to-life sentence was not a part of the record.  Id. at 3.  Plaintiff includes a copy

of an unsigned declaration with Peggy Bakarich's name stating that the conclusion of a hearing

on the judgment and sentence on October 14, 1999, was reported but was  unable to be

transcribed past page 436, due a faulty diskette in the stenomachine.  Id. at 18.  Plaintiff alleges

that he has had to endure 12 years of an illegal sentence based on the lack of transcripts.  Id. at 4.

Plaintiff appears to believe that the lack of a portion of the sentencing transcript signifies that no

judgment/sentencing took place.  Id.  Alternatively, he may be claiming that no sentencing took

place and because there is no transcript record, he has been subjected to an illegal sentence for

years now.  Id.  Plaintiff accuses defendant Bakarich of having failed to inform the trial court at

the time of this mistake/omission and of having failed to provide a declaration until all the

briefing was submitted in his direct appeal, averring that the belated notice constituted a criminal

act.  Id. at 5.

        Plaintiff alleges that he walked out an open door when he was sent to Yolo

County on a child custody matter on October 22, 1999, some eight days after an allegedly

fraudulent abstract of judgment from Sacramento County apparently shows he had been

sentenced there (in Sacramento County Superior Court) to a prison term of 25 years to life.  AC,

p. 4.  Plaintiff was picked up by Sacramento police on October 24, 1999, who released him again

to the custody of the Yolo County sheriff, whereupon he was thrown into solitary confinement

and forgotten for two years.  Id.

        Plaintiff claims that his appellate counsel, defendant Scheib, appointed on July 17,

2000, failed to contact him in Yolo County Jail before filing an opening brief.  AC, p. 5.  He

alleges that on August 13, 2001, she filed a supplemental brief, once she was informed by

petitioner that Sacramento County had forgotten to pronounce a sentence.  Id.  He accuses her of

having filed the opening brief without having reviewed the trial records that would have revealed

3

1  this omission, and he contends defendant Scheib told him defendant Bakarich was filing a

2  declaration of absent records with the Third District Appellate Court, which did not occur.  Id. at

3  5-6.

4           Plaintiff alleges, in addition, that CDCR (and presumably the defendant director)

5  has known since 2001 that plaintiff is being illegally confined.  AC, p. 7.  He notes that the

6  CDCR legal processing unit wrote to the Yolo County Superior Court [concerning the six-year

7  sentence he subsequently received from that court] from which CDCR received no response.

8  AC, p. 7.  In a copy of a letter dated August 27, 2001, which plaintiff includes as an exhibit, Yolo

9  County Superior Court Judge William S. Lebov is informed by a CDCR correctional case records

10 analyst that the abstract of judgment and minute order fails to reflect the relationship of the Yolo

11 County Court sentence and that of the Sacramento County Court, asking for a certified copy of

12 any minute order or modified abstract of judgment.  Id. at 23.  Within the letter, the case records

13 analyst makes a reference "that an illegal sentence exists...."  Id.  A copy of another letter from

14 the same analyst, dated February 26, 2002, directed to the Yolo County District Attorney

15 identifies "an error in the sentence imposed or a discrepancy in the legal documents," and states

16 that letters were sent on August 27, 2001 and on November 20, 2001 to the Court about the

17 problem to which no response had been received.  Id. at 24.

18          In a copy of another letter, dated much later,  March 24, 2009 (stamped received

19 March 26, 2009), a different case records analyst signed a letter directed to the Sacramento

20 County Superior Court criminal clerk, indicating that, inter alia, the October 14, 1999, "transcript

21 of proceedings at time of sentencing" was not included in the CDCR files for plaintiff.  AC, p.

22 25.  Plaintiff also includes a copy of an abstract of the Yolo County judgment indicating plaintiff

23 was convicted on March 2, 2001, with the six-year sentence for his escape from jail pronounced

24 on March 30, 2001.  Id. at 31.  Plaintiff also includes at least a partial copy of a sheet showing his

25 criminal history, wherein it is noted the life term he is serving began on April 6, 2001.  Id. at 32.

26 Plaintiff raises the question of how he can have begun serving a sentence supposedly imposed on

1   October 14, 1999, almost eighteen months later, such that he contends that CDCR's intake of

2   him was illegal and fraudulent and without the necessary clerk of court's certification.  Id., at 33.

3   Plaintiff asks that the court order an investigation into the documents that support his

4   confinement; issue an order for the Sacramento County Superior Court to issue the transcript of

5   the oral pronouncement of his sentence; make an order for CDCR to provide plaintiff with all his

6   legal records, including a receipt from the "sheriff department" for delivery of plaintiff to prison,

7   in compliance with state and prison regulation/statute and for CDCR to be enjoined from

8   continuing "there [sic] cruel confinement"; plaintiff also seeks punitive damages for his "illegal

9   confinement."  Id. at 3, 9.  Plaintiff's request that the court issue an injunction for his

10  confinement to be put to an end belies his assertion that he is not asking the court to "issue any

11  form of release from confinement."  Id. at 8.

12          The court has painstakingly laid out the claims of this putative action and finds the

13  defects of plaintiff's claims are such that this action should be dismissed with prejudice for the

14  following reasons.  Plaintiff's apparent ambivalence on the question of whether or not he seeks

15  release from his current confinement in this case appears to stem from the court's admonition in

16  the August 9, 2010, screening order that he may not proceed in a civil rights action if the relief he

17  seeks is his release from prison, but must pursue release in a petition under 28 U.S.C. § 2254.

18  See docket # 10, p. 4.

19          Federal law opens two main avenues to relief on complaints related
            to imprisonment: a petition for habeas corpus, 28 U.S.C.  2254,
20          and a complaint under the Civil Rights Act of 1871, Rev. Stat.
            1979, as amended, 42 U.S.C.  1983.  Challenges to the validity of
21          any confinement or to particulars affecting its duration are the
            province of habeas corpus, Preiser v. Rodriguez, 411 U.S. 475,
22          500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); requests for relief
            turning on circumstances of confinement may be presented in a §
23          1983 action.

24  Muhammad v. Close, 540 U.S.749, 750, 124 S.Ct. 1303, 1304 (2004) (per curiam).

25          Plaintiff, however, may not be proceeding on a habeas petition because he realizes

26  such a petition would be successive and, as such, must be authorized by the Ninth Circuit before

he may, as petitioner, proceed in this court.  See 28 U.S.C. 2244(b)(3); Rule 9, Rules Governing

Section 2254 Cases; Ninth Circuit Rule 22-3.  In the order at docket # 10 (p. 5, n.2), this court,

inter alia, took judicial notice of a previous petition upon which plaintiff, as petitioner, had

proceeded before the undersigned, challenging his 2001 Yolo County conviction for escape in

Case No. CIV-S-03-1106 LKK GGH P.[2]  The court further noted (id.) that the petition had been

denied by order filed on August 24, 2005, and that within [the January 18, 2005, findings and

recommendations adopted in the district judge's order] his sentences for both convictions, in

Sacramento County and Yolo County, had been set forth plainly.  The court now additionally

takes judicial notice of petitioner's challenge to his 1999 Sacramento County conviction and the

25-year-to-life sentence in a separate habeas, Case No. CIV-S-02-1671 GEB JFM P.[3]  That

petition was denied in an order filed on March 3, 2008.  As to CIV-S-02-1671, a certificate of

appealability was denied in both the district court and by the Ninth Circuit.  With regard to CIV-

S-03-1106, the district court's denial of his petition was affirmed by the Ninth Circuit.  On the

face of it, therefore, plaintiff appears to be seeking to circumvent herein the prior rulings of this

court denying his challenges to the convictions/sentences of Yolo and Sacramento Counties, the

legitimacy of which plaintiff seeks to put at issue again in the instant case.

   Under the doctrine of res judicata, a final judgment on the merits precludes the

parties or their privies from relitigating issues that were or could have been raised in that action.

Dodd v. Hood River County, 59 F.3d 852, 863 (9th Cir. 1995).  The Supreme Court has noted

that "claim preclusion" and "issue preclusion" are referred to collectively as "res judicata."

Taylor v. Sturgell, 553 U.S. 880, 128 S. Ct. 2161, 2171 (2008).

   The doctrine of res judicata is applicable to § 1983 actions.  Clark

---

[2]  The undersigned observed therein (id.) that judicial notice may be taken of court records. Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635n.1 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir.), cert. denied, 454 U.S. 1126 (1981).

[3]  Initially, the case was assigned as follows: Case No. CIV-S-02-1671 GEB PAN P.

1   v. Yosemite Community College Dist., 785 F.2d 781, 788 n.9 (9th Cir. 1986) (noting that there is

2   no exception to the rules of issue and claim preclusion for federal civil rights actions brought

3   under 42 U.S.C. § 1983), citing Migra v. Warren City School Dist. Bd. of Education, 465 U.S.

4   75, 84, 104 S.Ct. 892, 898 (1984); Allen v. McCurry, 449 U.S. 90, 97-98, 101 S.Ct. 411, 416-417

5   (1980); Piatt v. MacDougall, 773 F.2d 1032, 1034 (9th Cir.1985) (en banc).  Courts have held

6   that habeas proceedings can have preclusive effect in subsequent civil rights actions.  See

7   Hawkins v. Risley, 984 F.2d 321, 323 (9th Cir. 1993) (per curiam) (holding that a federal habeas

8   decision may have preclusive effect in a subsequent § 1983 action); Silverton v. Dep't. of

9   Treasury, 644 F.2d 1341, 1347 (9th Cir. 1981) (ruling that state habeas proceedings can have

10  issue or claim preclusive effect in subsequent § 1983 actions).

11          Under the doctrine of claim preclusion, a final judgment forecloses
12          "successive litigation of the very same claim, whether or not
            relitigation of the claim raises the same issues as the earlier suit."
13          New Hampshire v. Maine, 532 U.S. 742, 748, 121 S.Ct. 1808, 149
            L.Ed.2d 968 (2001).  Issue preclusion, in contrast, bars "successive
14          litigation of an issue of fact or law actually litigated and resolved in
            a valid court determination essential to the prior judgment," even if
            the issue recurs in the context of a different claim. Id., at 748-749,
15          121 S.Ct. 1808.

16  Taylor v. Sturgell, 553 U.S. 880, 128 S. Ct. at 2171.

17          A plaintiff cannot avoid the bar of claim preclusion merely by alleging conduct

18  not alleged in the prior action, by pleading a new legal theory, or by seeking a different remedy

19  for violation of the same primary right.  McClain v. Apodaca, 793 F.2d 1031, 1033-34 (9th Cir.

20  1986).  Cf. Hiser v. Franklin, 94 F.3d 1287, 1291(1996) (the prisoner's claims were not

21  precluded because they did not accrue until two years after the settlement agreement that

22  concluded a prior class action).  Claim preclusion applies where a § 1983 action implicates the

23  same "primary rights" as those raised in a prior proceeding.  Clark, 785 F.2d at 786.  The focus is

24  on the legal harm for which the plaintiff seeks redress in his second action.  McClain, 793 F.2d at

25  1034.

26          By "preclud[ing] parties from contesting matters that they have had

1    a full and fair opportunity to litigate," these two doctrines protect
     against "the expense and vexation attending multiple lawsuits,
2    conserv[e] judicial resources, and foste[r] reliance on judicial
     action by minimizing the possibility of inconsistent decisions."
3    Montana v. United States, 440 U.S. 147, 153-154, 99 S.Ct. 970, 59
     L.Ed.2d 210 (1979).
4

5    Taylor, 553 U.S. 880, 128 S. Ct. at 2171.

6              The Ninth Circuit has identified four factors that should be considered by a court

7    in determining whether successive lawsuits involve the same cause of action:

8              (1) whether rights or interests established in the prior judgment
              would be destroyed or impaired by prosecution of the second
9              action;
              (2) whether substantially the same evidence is presented in the two
10             actions;
              (3) whether the two suits involve infringement of the same right;
11             and
              (4) whether the two suits arise out of the same transactional
12             nucleus of facts.

13   See C.D. Anderson & Co., 832 F.2d 1097, 1100 (9th Cir. 1987); Costantini v. Trans World

14   Airlines, 681 F.2d 1199, 1201-02 (9th Cir. 1982); Harris v. Jacobs, 621 F.2d 341, 343 (9th Cir.

15   1980) (per curiam).  The fourth of these factors has been cited by some courts as the most

16   important.  See Headwaters, Inc. v. U.S. Forest Service, 399 F.3d 1047, 1052 (9th Cir. 2005),

17   citing Costantini, 681 F.2d at 1201-02; see also, C.D. Anderson & Co., 832 F.2d at 1100.

18   However, "[n]o single criterion can decide every res judicata question; identity of causes of

19   action 'cannot be determined precisely by mechanistic application of a simple test.'"  Costantini,

20   681 F.2d at 1202 n.7 (quoting Abramson v. Univ. of Haw., 594 F.2d 202, 206 (9th Cir. 1979)).

21   "'The crucial element underlying all of the standards is the factual predicate of the several claims

22   asserted.  For it is the facts surrounding the transaction or occurrence which operate to constitute

23   the cause of action.'"  Harris, 621 F.2d at 343 (quoting Expert Elec., Inc. v. Levine, 554 F.2d

24   1227, 1234 (2d Cir. 1977)).  This court finds that this action, wherein plaintiff is plainly seeking

25   to undermine prior decisions of this court by seeking to proceed in a civil rights action, is barred

26   by the doctrine of res judicata.

1    Moreover, to the extent that he may be seeking one, plaintiff is informed that,

2    federal courts lack jurisdiction to issue a writ of mandamus to a state court.  Demos v. United

3    States Dist. Court for the E. Dist. of Wash., 925 F.2d 1160, 1161 (9th Cir. 1991), citing 28 U.S.C.

4    § 1651.  Furthermore, "[t]here is no Supreme Court or Ninth Circuit authority on the due process

5    implications of a state court's failure to record portions of a criminal trial."  Madera v. Risley,

6    885 F.2d 646, 648 (9th Cir. 1989); see also, Peace v. Hall, 2002 WL 31689360*4 (N.D. Cal.

7    2002) (noting, citing Madera, supra, that in the context of a habeas petition, prejudice from a lack

8    of recordation would have to be established to show entitlement to relief).  Plaintiff, as petitioner,

9    was unable to establish the requisite prejudice in prior litigation.  This case should be dismissed

10   with prejudice for failure to state a claim upon which relief can be granted.

11   "Under Ninth Circuit case law, district courts are only required to grant leave to

12   amend if a complaint can possibly be saved.  Courts are not required to grant leave to amend if a

13   complaint lacks merit entirely."  Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).  See also,

14   Smith v. Pacific Properties and Development Corp., 358 F.3d 1097, 1106 (9th Cir. 2004), citing

15   Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995) ("a district court should grant leave to

16   amend even if no request to amend the pleading was made, unless it determines that the pleading

17   could not be cured by the allegation of other facts.").  "[A] district court retains its discretion over

18   the terms of a dismissal for failure to state a claim, including whether to make the dismissal with

19   or without leave to amend."  Lopez v. Smith, 203 F.3d at 1124.  "The district court's discretion

20   to deny leave to amend is particularly broad where plaintiff has previously amended the

21   complaint."  Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1072 (9th Cir.

22   2008), quoting In re Read-Rite Corp., 335 F.3d 843, 845 (9th Cir. 2003).

23   In this case, the court can discern no manner in which plaintiff could cure the

24   defects of his allegations.  This appears to be one of those relatively rare cases when to grant

25   plaintiff further leave to amend would be patently futile.  Thus, for the reasons set forth above,

26   this court finds that plaintiff's complaint is wholly frivolous, with defects for which no amount of

9

amendment could provide a cure, and for which the undersigned must recommend dismissal with prejudice.

Accordingly, IT IS HEREBY RECOMMENDED that this action be dismissed with prejudice for plaintiff's failure to state a claim upon which relief can be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, plaintiff may file written objections with the court and serve a copy on all parties.  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 21, 2010

/s/ Gregory G. Hollows

_____
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:009
john1183.fr